UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COURTNEY L. BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01866-TWP-DML |
| | ) | |
| DREES PREMIER HOMES, INC. | ) | |
| d/b/a DREES HOMES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on both a Motion for Judgment on the Pleadings (Filing No. 23) and Motion for Summary Judgment (Filing No. 39). The dispute in this case arises over a compensation agreement between Plaintiff Courtney L. Bishop ("Bishop") and Defendant Drees Premier Homes, Inc., d/b/a Drees Homes ("Drees"). The agreement specified that, upon termination of employment, Bishop would not be paid commissions for any home closings that were not yet consummated at the time of termination. Bishop's employment was ultimately involuntarily terminated, and at the time of his termination, several homes under his sales portfolio had not yet closed. Bishop argues he should be paid commissions for those closings, because the "commission-termination" provision in his compensation agreement is unenforceable as contrary to public policy. Drees moved for judgment on the pleadings, (Filing No. 23), and while that motion was pending, moved for summary judgment on all of Bishop's claims (Filing No. 39). For the reasons described below, the Court **grants** Drees' Motion for Summary Judgment.[1]

---

[1] In the interests of judicial economy and finality, the Court will address the pending Motion for Summary Judgment. As explained below, the resolution of that motion moots the Motion for Judgment on the Pleadings.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Zerante,* 555 F.3d at 584; *Anderson,* 477 U.S. at 255.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may grant such a motion, "so long as whatever is before the district court demonstrates that the standard...is satisfied"); *see also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including "depositions, documents electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials").

Thereafter, a non-moving party who bears the burden of proof on a substantive issue may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary

judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (highlighting that "these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. When ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

## II. BACKGROUND

The following facts are virtually undisputed, but any disputes, as required by Federal Rule of Civil Procedure 56, are presented in the light most favorable to Bishop as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Drees hired Bishop in May 2014 as a Market Manager in its Indianapolis Division, and Bishop's duties included discussing building and financing options with customers, reviewing home building plans, and receiving purchasing orders and executed contracts. ([Filing No. 41-1 at 21](); [Filing No. 41-1 at 29]().) He understood from his employment application, offer letter, guide to

policies and the employee handbook, that his employment with Drees was an at-will employee and could be terminated with or without cause at any time. The terms of Bishop's compensation package were governed by a Market Manager Compensation Policy for the Indianapolis Division (the "Compensation Agreement"), which outlines a largely commission-based compensation system. ([Filing No. 41-1 at 22](#).) Pursuant to the Compensation Agreement, when a home is sold, the Market Manager is paid two-thirds of his commission upon completion of the Field Plan Review (the "front-end commission"), and the remaining one-third is paid upon the closing of the home sale (the "back-end commission"). ([Filing No. 41-1 at 82](#).) Bishop read, understood, and agreed to the Compensation Agreement. ([Filing No. 41-1 at 22](#).)

The Compensation Agreement also specifies what effect an employee's voluntary or involuntary termination has on his commission payments. The Compensation Agreement provides as follows:

> In the event that the Market Manager leaves the employ of Drees Homes for any reason, compensation will be as follows: 1. Upon termination (voluntary or involuntary) commissions will be paid for completed *Field Plan* Reviews or on Closings that occurred prior to the termination. No further commission will be due on *Field Plan Reviews* or *Closings* that occur after the termination date.

([Filing No. 41-1 at 83](#), emphasis in original.) Drees involuntarily terminated Bishop's employment on April 30, 2015.[2] ([Filing No. 41-2 at 5](#).) At that time, Bishop had several home sales for which he had completed Field Plan Reviews, but the homes had not yet completed their closings. ([Filing No. 43-2 at 7](#).) He received his front-end commission payments for those field reviews, but did not receive the back-end commission payments for the closings that had not yet occurred. ([Filing No. 43-2 at 8](#); [Filing No. 41-1 at 14](#).) Bishop concedes that Drees has paid him all of the wages he was owed "per the letter of the contract." ([Filing No. 41-1 at 14](#).)

---

[2] The deposition page cited by Drees as to the date of termination does not appear in the excerpt submitted. Bishop does not dispute this fact, however, so the Court deems it admitted as to this motion.

Bishop filed suit in Indiana state court raising several claims against Drees involving unpaid wages. He seeks payment for the unpaid commissions under Indiana Code Sections 22-2-9-2(a) (commonly referred to as the "Indiana Wage Claims Statute") and 22-2-5-2 (commonly referred to as the "Indiana Wage Payment Statute"); breach of the implied promise of good faith and fair dealing; tortious breach of the implied promise of good faith and fair dealing; *quantum meruit*; and unjust enrichment. ([Filing No. 6-1](#).) Drees removed the lawsuit to federal Court, ([Filing No. 1](#)), and subsequently filed both a Motion for Judgment on the Pleadings, ([Filing No. 23](#)), and a Motion for Summary Judgment, ([Filing No. 39](#)).

### III. DISCUSSION

At the heart of Bishop's claim is his contention that the Compensation Agreement is unenforceable (or void) as contrary to public policy. ([Filing No. 43 at 10](#).) Matters of contract interpretation are questions of law, and therefore are appropriate for the Court's resolution at the summary judgment stage. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) ("[C]ontract interpretation is a question of law."). The Court will address the issue of whether the contract is enforceable, and then address Bishop's remaining claims.

**A.   Enforceability of the Contract**

Bishop argues that the Compensation Agreement is void, because it –

> …give[s] the employer Drees unfettered discretion to determine whether the employee Bishop need be paid at all! Both as written and as subsequently practiced, the employer may apparently wait until the moment before a closing…has fully materialized and decide to terminate the employee—for any reason or for no reason at all—without any obligation to pay commissions, regardless of the work and effort expended by the employee leading up to the closing.

([Filing No. 43 at 10-11](#).) Bishop contends this result is unfair and contrary to public policy.

The Indiana Court of Appeals has articulated the general rule that "a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted

by his employer." *Vector Eng'g & Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind. Ct. App. 1982). In *Vector*, however, the court concluded that "[t]his general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme." The court highlighted that "[i]f Vector had desired to deny commissions to [the employee] subsequent to his termination as an employee, Vector could have provided for this contingency in clear and unambiguous language." *Id.*

Bishop concedes that the Indiana Supreme Court has never concluded that contracts with commission-termination provisions such as the one hypothesized in *Vector* and at issue here are unenforceable. (Filing No. 43 at 11.) He nonetheless disagrees with the rule announced in *Vector*, and asks this Court to conclude that such provisions are contrary to Indiana's public policy. (Filing No. 43 at 11.) Bishop relies on a plurality opinion from the Indiana Court of Appeals to support his argument that the termination provision is void. (Filing No. 43 at 11-12, citing *Weiser v. Godby Bros.*, 659 N.E.2d 237 (Ind. Ct. App. 1995)). In *Weiser*, one judge on a divided panel concluded in a concurring opinion that a commission-termination provision was contrary to public policy and unenforceable. *Weiser*, 659 N.E.2d at 240. In that case, Judge Staton concluded that "the applicability of this provision in this employment at will context creates an unconscionable advantage in [the employer's] favor which is contrary to public policy, rendering this contract term unenforceable." *Weiser*, 659 N.E.2d at 240 (Staton, J. concurring).

Drees points to a number of other Indiana Court of Appeals cases applying the *Vector* rule that commission-termination provisions may be used to contract around the default commission accrual rule. In *Robinson v. Century Pers., Inc.*, 678 N.E.2d 1268, 1271 (Ind. Ct. App. 1997), the court explicitly adopted the *Vector* rule, and declined to follow the concurring opinion in *Weiser*. The court concluded that the *Weiser* opinion "as a plurality decision, is of no precedential value

6

and is not binding upon either the trial court or this court." *Robinson*, 678 N.E.2d at 1271. The court also concluded that employers and employees were free to agree that commissions would not be paid after an employee's termination. *Id.* A number of other Court of Appeals decisions post-dating *Weiser* and *Robinson* have likewise applied the rule formulated in *Vector*. *See, e.g., Helmuth v. Distance Learning Systems Indiana, Inc.*, 837 N.E.2d 1085, 1089 (Ind. Ct. App. 2005); *J. Squared, Inc. v. Herndon*, 822 N.E.2d 633, 637 (Ind. Ct. App. 2005); *Davis v. All American Siding & Windows, Inc.*, 897 N.E.2d 936, 940 (Ind. Ct. App. 2008).

The Court has not uncovered any Indiana Supreme Court decisions addressing this issue, but "when the intermediate appellate courts of the state have spoken to the issue, [the Court] shall give great weight to their determination about the content of state law, absent some indication that the highest court of the state is likely to deviate from those rulings." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). The balance of authority from the Indiana Court of Appeals favors the rule announced in *Vector*. Bishop cites no authority other than the concurring opinion in *Weiser* in support of his argument, and every other on-point authority reviewed by this Court applies the rule announced in *Vector*. Moreover, the Indiana Supreme Court has repeatedly counseled that "[c]ourts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties. We continue to believe that it is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." *Trimble v. Ameritech Pub., Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998).

Given the balance of Indiana intermediate appellate court authority, and the Indiana Supreme Court's emphasis on avoiding the unnecessary restriction of parties' freedom to contract,

the Court concludes that the contract is not void, and it is enforceable between the parties as written.

**B.      Count I-Violation of Indiana's Wage Payment and Wage Claim Statutes**

Drees moves for summary judgment on Bishop's claims under the Indiana Wage Payment Statute and Indiana Wage Claim Statute. In his response, Bishop fails to provide any argument in opposition to summary judgment regarding those claims. A party waives arguments not presented to the district court in response to summary judgment motions. *See Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999).

Perhaps Bishop does not respond because he cannot prevail on the merits of this claim. Drees argues the Indiana Wage Payment Statute does not apply to Bishop, because it only applies to those employees who are currently employed or have voluntarily left their employment. (Filing No. 40 at 7.) It is well settled under Indiana law that the Indiana Wage Payment Statute applies only to those employees who left their employment voluntarily or are still employed. *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011) (citing *St. Vincent Hospital and Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002)). Bishop does not dispute that he was involuntarily terminated, so he may not properly raise a claim under the Indiana Wage Payment Statute. The Court therefore **grants** summary judgment for Drees on this claim.

Regarding the Indiana Wage Claim Statute, Drees argues that, because no further compensation is due under the terms of the contract, Bishop cannot maintain a claim for unpaid wages. (Filing No. 40 at 7.) Indiana Code Section 22-2-9-2 provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred…" I.C. § 22-2-9-2(a). As described above, the Compensation Agreement is not void.

8

Therefore, the terms of that Agreement govern Bishop's compensation, and he has conceded that all amounts due to him under the terms of the contract have been paid. ([Filing No. 41-1 at 14](#).) Bishop does not allege any other sources of unpaid compensation. Accordingly, there is no genuine dispute of material fact regarding whether compensation is owed to him under I.C. § 22-2-9-2(a).

The Court **grants** summary judgment as to the claims under the Indiana Wage Payment and Wage Claim Statute as pled in Count I.

### C.    Count II and III-Implied Promise of Good Faith and Fair Dealing

Drees next argues that Bishop cannot maintain a claim for breach (or tortious breach) of the implied promise of good faith and fair dealing, because it fully complied with the terms of the Compensation Agreement. ([Filing No. 40 at 10](#).) Drees also contends that Indiana law does not recognize a cause of action for breach of the implied promise of good faith and fair dealing when the termination involves at-will employees. ([Filing No. 40 at 11](#).) Bishop does not respond to Drees' first argument, and he argues that Indiana law does, in fact, recognize the implied promise of good faith and fair dealing for at-will employees in circumstances where there exists a written employment contract. ([Filing No. 43 at 13-14](#).)

As for Drees' first argument, the Court agrees. It is undisputed that Drees acted in accordance with the terms of the contract. Under those circumstances, the Court cannot conclude that Drees' conduct constitutes bad faith. *See Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794-95 (7th Cir. 2014) ("Hanover did exactly what it was empowered to by the Agreement. We cannot call that bad faith.").

As for Drees' second argument, Bishop contends, without any citation to legal authority, that Drees' "conclusions" (the Court assumes with respect to either whether Bishop was an at-will

employee or as to whether the implied covenant of good faith and fair dealing applies to at-will employees) "are only valid, if at all, for situations where no written contract is present." (Filing No. 43 at 13.) Under Indiana law, "[e]mployment at will exists when an employee may be terminated for any reason or for no reason at all. In Indiana, the employment relationship is terminable at will unless there is a promise of employment for a fixed duration or consideration given by the employee in addition to his services." *Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 928 (Ind. Ct. App. 1985). The undisputed evidence establishes that Bishop was an at-will employee. As to the duty of good faith and fair dealing, "Indiana does not recognize that a duty of good faith and fair dealing is owed by an employer to an employee at will." *Hamblen*, 478 N.E.2d at 929 (citing *Perry v. Hartz Mountain Corp.,* (S.D. Ind. 1982)). Drees cites no case law to support the assertion that this rule only applies to at-will employees when there is no written contract. Indeed, *Hamblen* involved an executed, written employment agreement. Therefore, the Court concludes that under Indiana law, Drees did not owe Bishop a duty of good faith and fair dealing.

Accordingly, the Court **grants** summary judgment in favor of Drees on the breach and tortious breach of the implied covenant of good faith and fair dealing claims in Counts II and III.

D.  **Count IV-Unjust Enrichment and *Quantum Meruit***

Drees argues that the existence of an express contract between the parties precludes equitable claims for unjust enrichment and *quantum meruit*. (Filing No. 40 at 12.) Bishop's only argument in response is a single sentence that "[s]hould the Court declare the employment contract between the parties void, one source of remedies for the Plaintiff is certainly the Plaintiff's equitable claims." (Filing No. 43 at 15.)

As described above, Bishop's argument is unavailing, because the Court has concluded that the contract is indeed enforceable. Bishop does not and could not successfully raise an argument that these equitable forms of relief would be available given the Court's conclusion that the contract is valid. *See Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 168 (Ind. Ct. App. 2012) ("When the rights of the parties are controlled by an express contract, recovery cannot be based on a theory implied in law. The existence of an express contract precludes a claim for unjust enrichment because: (1) a contract provides a remedy at law and (2) as a remnant of chancery procedure a plaintiff may not pursue an equitable remedy when there is a remedy at law.") (citations omitted); *see also Indus. Dredging & Eng'g Corp. v. S. Indiana Gas & Elec. Co.*, 840 F.2d 523, 525 (7th Cir. 1988) ("Indiana appellate courts have uniformly held that the existence of a valid express contract for services ... precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit.") (internal quotations and citations omitted). The Court therefore **grants** summary judgment as to the unjust enrichment and *quantum meruit* claims.

### IV. CONCLUSION

For the reasons stated above, Drees' Motion for Summary Judgment, (Filing No. 39), is **GRANTED** in its favor and against Bishop. In light of that grant, Drees' Motion for Judgment on the Pleadings, (Filing No. 23), is **DENIED as moot**.

Final judgment will issue under separate order.

**SO ORDERED.**

Date: 9/19/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory P. Gadson
OFFICE OF THE INDIANA ATTORNEY GENERAL
gregory_gadson@yahoo.com

Andrew M. Kaplan
VORYS, SATER, SEYMOUR AND PEASE LLP
amkaplan@vorys.com

Donald S. Smith
RILEY BENNETT & EGLOFF LLP
dsmith@rbelaw.com